[No. 12545. Department Two. December 23, 1915.]

Eli Wagoner *et al.*, *Appellants,* v. F. D. Warn *et al.*,
*Respondents.*[1]

APPEAL—REVIEW—DISCRETION—NEW TRIAL. In a conflict in the
affidavits as to whether a juror's illness was such as to compel him
to consent to a verdict, the discretion of the trial judge, who saw
and knew his condition, in refusing a new trial, will not be dis-
turbed on appeal.

NEW TRIAL—MISCONDUCT OF JURORS—VERDICT — IMPEACHMENT—
MATTERS INHERING IN VERDICT. Affidavits of jurors that a verdict
was forced by jurors holding out for two of the defendants cannot
be received to impeach the verdict, as the matter inheres in the ver-
dict.

EXCHANGE OF PROPERTY—FRAUD—CONSPIRACY—EVIDENCE — SUFFI-
CIENCY. A verdict finding that the owner and manager of a factory
were not parties to a conspiracy to defraud the plaintiff in an ex-
change of property is supported by evidence that the negotiations
were carried on by other parties, one of whom had an option on the
factory and was represented to plaintiff as the owner, that plaintiff
heard of the owner's connection with the factory before the exchange
was consummated and was told by the manager that he was working
for the owner, but he made no investigation or attempt to ascertain
from the owner what the manager's authority was, and depended
upon the statements of the optionee; and other evidence indicating
their connection with the conspiracy was denied.

APPEAL—PRESERVATION OF GROUNDS—INSTRUCTIONS—REQUESTS. Er-
ror cannot be predicated upon the failure to make instructions more
specific or limited as to time, in the absence of any request therefor
or any request for instructions on the point.

Appeal by plaintiff from a judgment of the superior court
for Spokane county, Sullivan, J., entered March 20, 1914,
upon the verdict of a jury rendered in favor of certain of the
defendants, in an action in tort. Affirmed.

*R. M. Webster* and *Fred M. Williams,* for appellants.

*John P. Gray, Skuse & Morrill,* and *Mulligan & Bards-
ley,* for respondents.

[1]Reported in 153 Pac. 1072.

MORRIS, C. J.—In May, 1912, the appellants owned a large tract of land in Cascade county, Montana, and had a contract with one Kerr and wife to acquire an adjoining tract. Through one Coleman, a real estate agent of Great Falls, Montana, the appellants learned of an establishment known as the Spokane Paper and Cigar Box Company, at Spokane; and as a result of this information, Eli Wagoner came to Spokane on July 1, bearing a letter of introduction from Coleman to respondent Strike, whom he was to consult relative to a proposed exchange of the Montana property for the box factory. By Strike, the appellant was referred to the respondent Chambers, whom Strike stated was the owner of the factory; and the three men—Chambers, Strike, and appellant—visited the factory and were shown through the place by the respondent Warn, its manager. The only interest Chambers had in the factory was an option to purchase it from Dollar, the owner, for $2,500, and assume the indebtedness against the place. This was apparently not disclosed to Wagoner, who relied upon the representations of Chambers that he was the owner. Whether Warn and Dollar were parties to the deception is the vital question in the case, and their relations with the negotiations will appear later.

On the afternoon of the same day, the four men met at Chambers' office, and a contract was drawn up embodying the terms of the proposed exchange. Wagoner refused to sign the contract, however, until he could consult his wife, and it was agreed that he should take the contract with him to Montana and talk the matter over with her. After his return to Montana, Wagoner and wife signed the contract and sent it to Coleman, who forwarded it to Strike at Spokane. Several days later, Chambers, Strike, Coleman, and one Le Marinel visited the appellants' property in Montana and, after an investigation, Chambers signed the contract and made some arrangements to look after the Montana property. At this time, he also suggested to Wagoner that he,

Wagoner, go to Spokane to look after the factory. Wagoner accordingly made another trip, on July 27, to Spokane, and, after some negotiations, a bill of sale for the factory and a deed to the Montana property were drawn, and the bill of sale given to Strike to hold until Mrs. Wagoner should sign the deed. When this was done, Wagoner returned to Montana with the deed to obtain his wife's signature thereto. Before leaving Spokane, Wagoner gave Warn a check for $500, which Warn stated was necessary to carry on the business of the box factory, and allowed Warn to continue as manager.

After his return to Montana, Wagoner changed his mind about carrying out the exchange and so informed Strike. However, after a talk with Coleman, Strike, and Chambers, who came to Montana, in which Wagoner asserts he was threatened with arrest if he failed to complete the deal, and after assurances that the trade would be a good one for them, Wagoner and wife executed the deed to the Montana property. While in Montana, Wagoner received several letters from Warn relative to the management of the factory. Between August 24 and 31, Wagoner was in Spokane and assisted with work at the factory, but did not secure any information concerning the business affairs of the establishment. Shortly after his return to Montana on August 31, Wagoner received a telegram from Warn requesting him to come to Spokane on September 13, and was around the factory until September 22, when, at a meeting in Chambers' office, Wagoner was ordered to pay the $2,500 owing Mr. Dollar on the purchase price, or to sign a release of the factory. Upon Wagoner's continued refusal to pay the $2,500 or leave the factory, he was ejected. He thereupon instituted this action against Warn, Chambers, Dollar, and Strike, alleging that they had conspired to defraud him of his property in Montana, which Chambers had in the meantime sold to Le Marinel, and praying damages of $25,000. The second trial of the cause, from which this appeal is

taken, resulted in a verdict for the appellants against Strike and Chambers, and against appellants in favor of Dollar and Warn. The appellants made a timely motion for new trial, which was denied, and they have appealed.

One of the grounds on which a new trial was asked was misconduct of the jury which, the appellants contend, prevented them from having a fair trial. The affidavit of juror Linbarger states that, on the evening before the case was given to the jury, he was feeling ill and so notified the trial judge. However, on the next day, he was able to return and serve throughout the day. But he states that he consented to the verdict only because he was so ill that he could not remain in the jury room longer. In addition to this, he charges certain of his fellow jurymen with holding out for Dollar and Warn. Nine of the jurors in this case made affidavits either to impeach or vindicate the verdict as returned, either charging or denying that the verdict was not arrived at fairly. On the ground of the illness of juror Linbarger, we are satisfied that the trial judge, who saw and knew his condition, was competent to decide whether the illness was such as to warrant a new trial, and that there was no abuse of discretion in denying it. As to the other ground urged, it was held in *State v. Gay*, 82 Wash. 423, 144 Pac. 711, that matters such as are set out in the affidavits inhere in the verdict and cannot be received to impeach it. Rem. & Bal. Code, § 399 (P. C. 81 § 729), which was under consideration in *Ralton v. Sherwood Logging Co.*, 54 Wash. 254, 103 Pac. 28, gives the only exception to the rule that affidavits by jurors will not be received to impeach their verdict, and the affidavits here are not within that exception. We are, therefore, precluded from considering them.

The other grounds of alleged error relate to the insufficiency of the evidence to warrant a verdict against appellants in favor of Dollar and Warn, and to certain instructions concerning the appellants' knowledge of Dollar's connection with the box factory and Warn's representations of

the ownership and value of the plant. Wagoner testified that Warn had represented the value of the factory to be much greater than it actually was, but this was denied by Warn. We have found nothing in the testimony to indicate that Warn in any manner led Wagoner to believe that Chambers was the owner of the factory. Warn apparently knew of Chambers' relations with Dollar and that he held only an option on the property, but does not appear to have known the exact nature of the deal between Chambers and Wagoner, and when told that Wagoner was to be the future owner of the establishment, he appears to have acted in entire good faith.

The appellants sought to connect Dollar with the conspiracy by the testimony of Chambers' stenographer that he consented to the contract being made out without his signature in order to protect him if trouble ensued. The witness, however, was not positive that the paper mentioned in the conversation related by her was the contract with Wagoner, and the facts testified to were denied by Dollar. Wagoner testified that he first knew that Dollar was the owner of the factory some time in September, which was after the deeds to the Montana land had been delivered. However, he also testified as follows:

"I first learned of Mr. Dollar's name in connection with the property the last of July and may be a little later [the deed to the Montana property was not delivered until August]. When I learned of Mr. Dollar's connection I did not communicate with him or find out from him his interest in the factory or anything in connection with the matter; I had nothing to do with Mr. Dollar in the matter. Warn told me he was working for Dollar. I might have heard something said about Dollar's connection the latter part of July, and from that time on I made no effort to communicate with him or to ascertain from him what Warn's authority was there, if any; I was depending on the statements that were made me by Chambers and any statements that may have been made by Warn."

The instructions excepted to were to the effect that Wagoner had no right to rely on. the statements of Warn and Chambers if he knew Dollar was the owner of the property, and if he knew that Dollar had placed a bill of sale in escrow to be .delivered only when $2,500 was paid, the verdict must be for Dollar unless this money had been paid. The ground of exception was that the instructions were not limited to knowledge acquired prior to the completion of the deal. Appellants did not ask to have the instructions made more specific nor request other instructions on this point, and as applied to the evidence, we fail to see wherein they can legally complain that the instructions were prejudicial to them.

A thorough review of the evidence has convinced us that the appellants have had a fair trial, and that the jury did not find contrary to the evidence in failing to find against the respondents Dollar and Warn. The facts were seriously disputed and the appellants evidently did not convince the jury that Dollar and Warn were parties to the fraud. We find no abuse of discretion on the part of the trial court in denying the motion for a new trial.

Judgment affirmed.

Fullerton, Ellis, and Main, JJ., concur.