[No. 11976.   Department Two.   December 7, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v.
WILLIAM N. GAY, *Appellant*.[1]

RAPE—EVIDENCE OF COMPLAINTS—ADMISSIBILITY. In a prosecution for rape of a child under the age of consent it is admissible to allow the prosecutrix to testify that she made complaints within a reasonable time after the offense, even though the element of consent was not an ingredient of the offense.

SAME—EVIDENCE OF COMPLAINTS—PERSONS TO WHOM MADE. In a prosecution for rape, it is admissible, in proving the making of complaints within a reasonable time, for the prosecutrix to name the person to whom she made the complaints.

APPEAL—REVIEW—HARMLESS ERROR — WITHDRAWAL OF EVIDENCE. Where, in a prosecution for rape, evidence of complaints made were admitted without showing the time of the complaints, the withdrawal of the evidence from the jury, as soon as the time was fixed and it appeared that the complaints were not seasonably made, cures error in admitting the testimony, the presumption being that the jury obeyed the instructions, unless overcome by a contrary showing.

RAPE—EVIDENCE—PRIOR OFFENSES — ADMISSIBILITY. In a prosecution for the statutory rape of a child under the age of consent, in which consent is not a material inquiry, it is inadmissible to show previous acts of unchastity by the prosecuting witness committed with other men; since she could not give her consent, and the evidence of such acts could not affect her credibility.

[1]Reported in 144 Pac. 711.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE. The exclusion of evidence to establish a certain fact is not prejudicial error, where the fact was established by other evidence.

APPEAL — REVIEW — HARMLESS ERROR — EXCLUSION OF EVIDENCE. The fact that evidence was excluded which tended to show that the defendant was excited when he made admissions in answering questions put to him by the prosecuting attorney at an arranged meeting, is not prejudicial, where it had been shown by all the state's witnesses that he was nervous and excited at the time in question, and that he knew beforehand the purpose of the meeting.

RAPE—EVIDENCE—PENETRATION—SUFFICIENCY. In a prosecution for rape, under Rem. & Bal. Code, § 2437, evidence of any penetration, however slight, is sufficient proof of consummation; and the fact may be proved by direct or circumstantial evidence.

NEW TRIAL—SURPRISE—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial in criminal, as in civil cases, will not be granted for surprise at the state's evidence, when no motion for delay or for a continuance was made to enable the defendant to procure the newly discovered evidence of a witness which was easily obtainable and would have met the evidence by which defendant was surprised.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—IMPEACHING EVIDENCE. A new trial will not be granted for newly discovered evidence to impeach a witness, or upon a collateral matter, which would not disprove the main charge.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. A new trial will not be granted for newly discovered evidence which is merely cumulative, and where there is no reasonable probability that it will change the result.

NEW TRIAL—MISCONDUCT OF JURY—IMPEACHMENT OF VERDICT. A new trial for misconduct of the jury cannot be granted upon an affidavit of a juror that he and certain other jurors did not believe in the guilt of the accused, but finally consented to a verdict of guilty under the belief that, on a recommendation of mercy, the accused would be given a jail sentence no longer than the time he would be compelled to remain in jail awaiting a new trial; since the matter inheres in the verdict, and the verdict in that respect cannot be impeached by a juror.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 11, 1913, upon a trial and conviction of rape. Affirmed.

*Morris & Shipley*, for appellant.

*N. M. Sorenson* and *E. L. Baker*, for respondent.

FULLERTON, J.—The appellant was convicted of the crime of rape, alleged to have been committed upon the person of his sister, a female child of the age of fourteen years. From the judgment and sentence pronounced upon him, he appeals. His assignments of error can best be discussed in the order in which they are presented by his counsel.

In her examination in chief, the prosecuting witness, after testifying to some four different acts of intercourse between herself and the appellant, had at intervals separated by a considerable lapse of time, was permitted to testify, over objection, that she had made complaint of the assaults to a third person, and to give the name of the person to whom the complaint was made. Later on in her testimony, the exact time of making the complaint was shown, whereupon the court, on motion of the appellant, withdrew from the jury all of the testimony concerning the complaint, and instructed the jury not to consider it in making up their verdict; basing his ruling on the ground that the complaint was not made in such reasonable time as to have any probative force as evidence. The appellant contends that the court committed prejudicial error in this ruling, first, because evidence of complaints are not admissible in a prosecution for rape where the element of consent is not a necessary ingredient of the offense, and second, because the court allowed the prosecution to go beyond the rule in permitting the witness to name the person to whom the complaint was made. The cases of *State v. Hunter*, 18 Wash. 670, 52 Pac. 247, and *State v. Griffin*, 43 Wash. 591, 86 Pac. 951, are principally relied upon as sustaining the contention.

We cannot, however, think the cases bear the construction the appellant puts upon them. The case of *State v. Hunter*, was a prosecution for an attempt to commit rape upon the person of a female child of the age of eight years. At the trial, the mother of the child was permitted, over objection, to testify to the fact that the child made complaint to her of the assault within an hour after it had been committed. This

was assigned as error on an appeal after conviction, but the court sustained the conviction, saying that it was not "error to permit the mother to testify that the prosecutrix made complaint to her immediately, or at least within an hour, after the assault was committed." The case is relied upon, also, as sustaining the second branch of the contention, but we think it supports the contrary rule. True the court did say, in the course of the opinion, that the "better rule is to restrict the evidence to the fact of complaint, and that anything beyond that is hearsay of the most dangerous character." But the court was speaking concerning the particulars of the complaint, the facts and circumstances of the assault as detailed by the person assaulted when making the complaint, not to the question whether the person to whom the complaint was made might or might not be named. Indeed, it is the common practice to prove the fact of complaint by the person to whom the complaint was made, and it was in this manner that the fact was proven in the particular case. Surely, if it be permissible to produce before the jury the very person to whom the complaint was made, it is equally permissible to permit. the person assaulted, when testifying to the fact that she made complaint of the assault, to name the person to whom the complaint was made.

The case of the *State v. Griffin* was, likewise, a prosecution for rape committed upon a female child under the age of consent. In that case, also, the court below admitted evidence of complaints made by the prosecutrix following the commission of the assaults upon her. But while the admission of this evidence was held error on the appeal of the cause, it was not so held because inadmissible under all circumstances, but because there were "months of inexcusable delay" between the time of the commission of the crime and the time the complaints were made, and because other circumstances indicated that the complaints were not made spontaneously, but in pursuance of an attempt to manufacture testimony. On the other hand, the court distinctly stated that such complaints,

when seasonably made, tended to corroborate the prosecuting witness, and quoted approvingly from the case of *Thompson v. State,* 38 Ind. 39, wherein it was laid down as a settled postulate of the law, "That the prosecutor may show by the testimony of the prosecuting witness, or that of any other witnesses, that she made complaint of the outrage recently after its commission, and when, where, and to whom it was made." As further proof that this court has never considered such testimony inadmissible in a prosecution for rape upon a female child under the age of consent, we call attention to the case of *State v. Myrberg,* 56 Wash. 384, 105 Pac. 622, decided subsequent to the cases relied upon by the appellant, wherein it was expressly held that it was proper to prove that the injured female made complaint when such complaint was seasonably made; holding a complaint to be seasonably made when made possibly between fifteen and twenty days after the commission of the offense. We cannot conclude, therefore, that evidence relating to the complaint. made by the prosecutrix of the assaults made upon her was intrinsically objectionable, but that it was objectionable, if objectionable at all, because made at a time too remote from the time of the commission of the offense to have weight as a probative fact.

But it is contended that the evidence was so far prejudicial as to be incapable of cure by its withdrawal from the consideration of the jury. To this point, the appellant cites *State v. Pryor,* 67 Wash. 216, 121 Pac. 56. That case, however, was an extreme case. The evidence admitted and subsequently withdrawn had reference to offenses degrading in their nature, in no way connected with the offense upon which the appellant was being prosecuted, and was withdrawn only on condition that the defendant would admit a fact necessary to be shown in order to convict him of the offense with which he was charged. Under these circumstances, the court could well conclude that the act of the court did not remove the prejudice occasioned by the admission of the im-

proper evidence. But it was not therein intended to be held that no error in the admission of improper testimony can be cured by such means, and especially was it not meant to be held that evidence, not objectionable in itself, but improperly admitted because of a circumstance not shown when the testimony was offered, cannot be cured by withdrawing it from the consideration of the jury. The presumption in all cases is that the jury obeyed the instructions of the court, and this presumption must prevail until it is overcome by some showing that the fact is otherwise. To withdraw evidence subsequently discovered to be improperly admitted is a common practice in criminal as well as in civil causes, and the procedure is generally held to cure any error caused by its improper admission. *State v. Manville,* 8 Wash. 523, 36 Pac. 470; *Yakima Valley Bank v. McAllister,* 37 Wash. 566, 79 Pac. 1119, 107 Am. St. 823, 1 L. R. A. (N. S.) 1075. We think in the present case any error committed by the admission of the testimony objected to was cured by its subsequent withdrawal.

The second contention relates to the exclusion of certain proffered evidence. On the cross-examination of the prosecutrix she was asked if she had not sustained sexual relations with another brother at about the times of the alleged assaults made upon her by the appellant, and later on the brother was produced as a witness and similar questions were propounded to him. The court sustained objections to this line of testimony, and the appellant contends for error in the ruling, arguing that the testimony was competent for the purpose of impugning the veracity and credibility of the witness. It is the general rule that, in prosecutions for forcible rape, specific acts of unchastity on the part of the prosecutrix cannot be shown to affect her credibility, although her general reputation for chastity may be shown for that purpose. *State v. Holcomb,* 73 Wash. 652, 132 Pac. 416; *People v. McLean,* 71 Mich. 309, 38 N. W. 917, 15 Am. St. 263; *People v. Abbott,* 97 Mich. 484, 56 N. W. 862, 37 Am. St. 360;

Underhill, Criminal Evidence (2d ed.), § 418; 3 Greenleaf, Evidence, § 214. The same rule applies to a case of statutory rape. *State v. Workman*, 66 Wash. 292, 119 Pac. 751. Evidence of this character has been held in some of the cases to be admissible for the purpose of showing consent, but consent is not a material inquiry in the instant case. The female child against whom the offense was committed was under the age of fifteen years, and by the provisions of the statute conclusively presumed to be incapable of giving consent. To carnally know a female child who is under that age is a crime in the eyes of the law, even though she be a wanton of the most degraded character.

As was said in the case of *People v. Abbott, supra,*

"Respondent's counsel drew from the girl the fact that at other times prior to the alleged offense she had had intercourse with several other men. The court admitted this testimony on the claim of counsel for respondent that it was competent as bearing upon the girl's credibility. It was not competent, in this case, even for that purpose. If the girl had been of the age of consent, it might be competent to admit evidence of her general reputation for chastity, as bearing upon the probability of her story, but specific acts of unchastity could not be inquired into. *People v. McLean*, 71 Mich. 309. But here the law conclusively presumes that the girl could not give her consent, and every act of intercourse with her would be a crime committed against her, and such acts could not, therefore, affect her credibility. Her reputation for truth and veracity could be inquired into the same as of an adult, but she could not be impeached by her acts of intercourse."

But if the rule were otherwise, there could be no reversible error in the ruling in the particular instance. The appellant had the benefit, if benefit it was, of the fact sought to be shown. Elsewhere in the cross-examination of the prosecutrix, had pertaining to another matter, it was made clearly to appear that the other brother, at the time concerning which the inquiry was made, had been guilty of carnal intimacy with her, and that the appellant had been informed of the fact. As the fact alone, not the manner in which it was presented

to the jury, was the material matter, any error caused by the rejection of the testimony in the first instance was cured by its subsequent admission.

After the prosecuting attorney had been informed of the probable intimacy of the appellant with the prosecutrix, he sent a deputy sheriff to the appellant's place of residence with the request that he appear in Chelan on a certain day. The appellant appeared at the time appointed, met the prosecuting attorney, the prosecutrix, a committing magistrate, and two other persons, at the office of the committing magistrate. While there, the prosecutrix made charges against him of criminal relations, and subsequently, after the prosecutrix had left the room, the prosecuting attorney questioned him as to their truth. At the trial, the persons present were severally called as witnesses for the state, and each testified that, in answer to the prosecutor's questions, the appellant admitted the truth of the girl's statements. On cross-examination, they further testified that the appellant appeared nervous and excited during the prosecutor's examination. The appellant, while testifying in his own defense at the trial, denied making the admissions. The appellant's wife testified in his behalf, and during the course of her examination, the court sustained an objection to the following question put to her by his counsel: "What is the disposition and nature of Mr. Gay [meaning the appellant] with reference to becoming excited in answering questions?" It is claimed that, owing to the somewhat peculiar nature of the case, the court committed reversible error in refusing to permit an answer to the question.

We cannot, however, think the ruling has that effect. While the court could properly have permitted the witness to answer, an answer to the effect that he did become nervous and excited when questioned, or when answering questions, would have thrown but little light on the question of his guilt or innocence. That he was nervous and excited at the time was, as we have shown, admitted by all of the witnesses

testifying to the admissions. That his nervousness and excitement did not arise from the suddenness of, or surprise at, the accusation, appeared elsewhere in the testimony. It was shown that he knew, prior to the time he was summoned by the prosecuting attorney, of the accusations his sister had been making against him, and that he knew that it was concerning them that the prosecutor wished to see him. The only purpose of the question was to give rise to an inference that the appellant, because of his peculiar disposition, might have become excited at the meeting in the magistrate's office, and answered the questions put to him unwittingly; but, as the fact of excitement itself appeared, all that could be gained by an answer to the question was accomplished.

It is next contended that there was no proof of a consummated offense in that there was no proof of actual penetration. But, without detailing the evidence at length, we think it sufficient to justify the jury in finding that there was some penetration. The prosecutrix testified, and it was testified that the appellant admitted at the meeting in the magistrate's office preceding his arrest, that the appellant persisted in the act of intercourse until he was compelled to desist because of the pain it caused the prosecutrix. It is the general rule, and in this state the rule of the statute (Rem. & Bal. Code, § 2437; P. C. 135 § 369), that any penetration, however slight, is sufficient to satisfy the requirement in this regard. It is the rule, also, that penetration may be proved like any other fact, that is, either by direct or circumstantial evidence. Clearly, therefore, if the jury believed the evidence, they were warranted in finding that there was penetration within the meaning of the rule.

So with the further contention that the evidence did not justify the verdict. The prosecutrix testified to every element necessary to constitute a completed offense. In this she was corroborated by the witnesses who testified to the appellant's admissions. The weight and sufficiency of the evidence was therefore for the jury, and this court is not

privileged to say that they drew a wrong conclusion there-from.

At the trial, as we have before stated, the prosecutrix testified to some three distinct acts of carnal intercourse occurring between herself and the appellant, in addition to the act set forth in the information. One of these acts, she testified, occurred in a house in which she was living with her mother, and at a time when her mother was in the house. On cross-examination, she was asked if she had not testified on her preliminary examination that the appellant had made but one attempt to have sexual intercourse with her, the same being the act charged in the preliminary complaint and set forth in the information. She answered by saying that she did not remember of being asked concerning any act other than the one charged, but that if she had been so asked she answered truthfully. On the appellant's case the committing magistrate was called by way of impeachment, and testified that the prosecutrix did say at the preliminary hearing that there had been but one act of sexual intercourse between herself and the appellant, and this, in answer to a question put to her by the prosecuting attorney himself. After the return of the verdict, the appellant moved for a new trial, the second ground of the motion being surprise at the testimony of the prosecuting witness concerning acts of intercourse other than the one alleged, and unpreparedness to meet the testimony for that reason. The motion was accompanied by the affidavit of the appellant, averring his surprise at the testimony, and averring that the mother would, had she been present in court, have disputed and entirely disproved the testimony of the prosecuting witness concerning the act stated to have occurred at the house within which the mother was present, and that her testimony could be procured on a retrial of the cause. The appellant's attorney, who had active charge of the conduct of the defense, also filed an affidavit to the fact of surprise, averring, however, that "since the trial he has been advised that one Emma Gay [the mother] could

and would, if present in court, have testified to facts which would clearly establish beyond a reasonable doubt the impossibility of the act testified to as having taken place in the Long house in the month of June, 1912," the house referred to by the prosecuting witness. The affidavit of the mother was not produced, nor does it appear that her affidavit could not then have been obtained. Nor was surprise claimed at the time of the trial, or a postponement of the trial or a continuance asked that the mother might be produced as a witness at the trial, although it appeared that she was at that time in the county of the place of trial, and only some twenty miles distant from such place.

In *Reeder v. Traders' Nat. Bank*, 28 Wash. 139, 68 Pac. 461, the following was stated as the general rule applicable to new trials based on the ground of surprise:

"It is a recognized principle that, when an application for a new trial on the ground of accident or surprise is made, it is not only necessary that the party should have been surprised, but that it was not the consequence of neglect or inattention on. the part of the party surprised; also that he used all reasonable efforts to overcome the evidence which worked the surprise, or that it was not within his power to have done so by the employment of reasonable diligence.

" 'But he can never, after having submitted his cause, on finding that the verdict or judgment is against him, become surprised at what had previously happened during the trial and ask the court to relieve him from his own error, mistake, or omission.' "

In *Pincus v. Puget Sound Brewing Co.*, 18 Wash. 108, 50 Pac. 930, the following language was used:

"But in any event, if this testimony was so essential to the defendant's case that it would warrant the granting of a new trial, then it was essential enough to have warranted the granting of a non-suit or of a continuance. If the matter had been presented to the court when it was discovered that the desired evidence could not be obtained, a motion for continuance should have been made and the same court that granted the motion to set aside the verdict would undoubted-

ly have granted a motion for a continuance, on terms or
otherwise.  And in any event, the plaintiff would have been
entitled to a nonsuit.  If he was surprised on the trial of
his case, his remedy was as we have indicated; if he was not,
he simply took chances on obtaining a verdict from the jury
on the testimony which he had at hand; and having elected
to submit his case to. the jury on such testimony, he cannot
now be heard to complain that the testimony was insufficient,
and that he could, on another trial, produce more and better
testimony.  If this practice were tolerated, no reliance could
be placed upon a judgment, and it would become a favorite
practice with litigants to obtain a second trial, if unfortun-
ate in the first, by neglecting to procure all the testimony
which might originally have been procured in the case."

Mr. Bishop in his New Criminal Procedure, Vol. 1, at
§ 966d, says:

"If during the trial a party is 'surprised', as the expres-
sion is, by some unforeseen turn in the case for which he is
not prepared,—for example, through having been misled as
to testimony—the court on request will grant such suspen-
sion or continuance as the emergency requires.  Neglecting
to apply for which, he cannot on defeat have a new trial;
but if wrongfully refused, he may; and in emergencies less
extreme, the court in its discretion will permit postponements
after the trial has begun, for the parties to complete some
needful preparation."

And at § 1280 of the same work:

"Surprise is a familiar ground for a new trial, both in
criminal cases and civil.  It must arise before verdict, not
after; ordinarily the surprised party must have asked for the
needful postponement or continuance to procure the required
evidence, and have been refused; and the case must come also
within the other principles familiar to the law of new trials."

So, Mr. Wharton:

"The mere fact of a party being surprised by the intro-
duction of unexpected evidence, however, is no ground for a
new trial, especially when the affidavit does not show that the
'surprising' evidence was not true, and that no effort was

made on trial for continuance to meet the surprise." Wharton, Criminal Pleading and Practice (9th ed.), § 884.

In *Hope v. State*, 124 Ga. 438, 52 S. E. 747, it was said:

"When counsel for the accused learned that the witness upon whose statement he relied in reference to the proof of an alibi had misled him, he should have called the attention of the court to the matter and made a motion for the postponement of the case. As knowledge of this fact came to him pending the trial, he could not take the chances of a favorable verdict, and, after an unfavorable verdict, insist upon a new trial being granted on account of a fact which came to his knowledge before verdict."

In *State v. Gardner*, 33 Ore. 149, 54 Pac. 809, the court stated the rule as follows:

"The affidavits in support of the motion for a new trial show that Mabel Hitchman testified at defendant's preliminary examination, and also before the grand jury, that the crime was committed May 20, 1897, and the indictment so alleged the fact. At the trial, however, she testified that the overt act occurred a month earlier, and this change is the surprise of which the defendant complains, and which his counsel insist affords ground for a new trial. At the time the testimony was so given no motion for a continuance was made, and defendant waited until after the verdict was rendered before making any effort to guard against the effect of the alleged surprise. The rule is well settled that to entitle a party to have a judgment set aside on account of surprise, it must appear he immediately applied for a postponement of the trial when the surprise occurred, and that he cannot speculate upon the chances of obtaining a favorable verdict, and after having failed in this respect, urge as a ground for a new trial any matter that occurred at the trial, and was known to, but waived by, him."

It is true that in this state the wording of the statute relating to granting new trials on the ground of surprise in civil actions differs somewhat from that relating to granting new trials in criminal actions, and it may be contended that, because thereof, the rule we have applied to civil causes is not applicable to criminal causes. But we think the same rule

should be applied to both. As indicated in the cases cited, it is the policy of the law to require claims of error to be made at the time the matter on which the claim is predicated occurs. The wisdom of the policy is well illustrated in the present case. Had the appellant called the attention of the court to the surprise at the time it occurred, the witness which he now offers to counteract the statements of the prosecutrix could have been brought before the court at most with but a few hours delay and with but trifling additional cost, while the procedure adopted, if allowed to prevail, will entail a new trial of the entire case. Reasonable diligence may be exacted of a defendant, and it is not reasonable diligence to fail at the trial to call attention to matters which can be there remedied, and which are then as much within the knowledge of the defendant as they can be at any subsequent time.

Furthermore, it is a general rule that new trials will not be granted in order to supply evidence to sustain or impeach a witness. *State v. Beeman,* 51 Wash. 557, 99 Pac. 756. Here the evidence offered is of an impeaching nature. The act of intercourse related by the prosecutrix, which it is claimed the mother will contradict, was not the act charged in the information, or the act upon which the appellant was convicted. While, under the rule, it was permissible to show the act as tending to support the main charge, it was, in a sense, a collateral matter, the disproof of which would not disprove the particular offense charged.

Again, it is a general rule that newly discovered evidence is not a ground for a new trial where the evidence is merely cumulative and there is no reasonable probability that its admission would have changed the result. *Leschi v. Territory,* 1 Wash. Terr. 13; *State v. Underwood,* 35 Wash. 558, 77 Pac. 863; *State v. Bridgman,* 51 Wash. 18, 97 Pac. 1096. As we have before stated, the affidavit of the mother was not produced, and there is no certainty as to the precise matter to which she would have testified. The nature of the affidavit of the appellant and his attorney, we have before indicated.

We have also indicated in part the nature of the testimony upon which the verdict rested. In addition thereto the appellant while on the witness stand made a voluntary statement showing that his conduct toward the prosecutrix, at the time she testifies the act charged in the information was committed, was grossly indecent and reprehensible, although not amounting to a sexual assault. We cannot feel, therefore, that if the evidence of the witness had been produced at the trial, and she had testified as it is now claimed she would testify, the result would have been different; that the conviction rests not so much upon the direct testimony of the prosecuting witness as upon the corroborating testimony, and this would not have been affected by the evidence now thought to be material.

A further ground for a new trial is based upon misconduct of the jury. The misconduct is predicated upon an affidavit of a juror reading as follows:

"H. W. McDaniel, being first duly sworn, on his oath says: That he was one of the jurors who sat upon the trial of the state of Washington vs. William N. Gay, tried in the superior court of Chelan county, Washington, in the month of November, in the year 1913, said trial beginning on the 21st day of said month and terminating in a verdict of 'Guilty,' which said verdict was agreed upon at about the hour of two o'clock in the afternoon of the 25th of said month, after deliberating from about 10:30 p. m. of the 24th day of said month; that at the time of agreeing to said verdict this affiant did not believe and had not been convinced by the evidence produced upon the trial of said cause that the defendant was guilty as charged in the information of said cause, and he does not now believe that he was guilty, but that at the time he agreed to said verdict he believed that no verdict would be returned in said cause, as the jury just prior to that time stood nine to three for conviction, but the jurors talked the situation over and it was stated by members of said jury that if a disagreement was had and no verdict returned that the defendant would be obliged to remain in jail for a considerable length of time awaiting a new trial, (he being at that time confined in jail); that if a verdict of

'Guilty' was returned, and with it a recommendation ·and request to the court for leniency in the sentence, that the defendant would receive a jail sentence and be permitted to enter upon the service thereof at once, and that he would have all or at least the major portion of said sentence served before a new trial of the cause could be had, and that it would be better for the defendant to so return a verdict of 'Guilty' and permit him thus to serve a jail sentence than for the jury to disagree and necessitate a new trial and this affiant voted for, and agreed to said verdict solely and wholly upon the belief that the conditions above detailed existed and that a jail sentence would be inflicted as the penalty in this cause, and that no other penalty would be inflicted, but he did not at that time believe the defendant was guilty of the crime charged against him; that the jurors G. B. Landeroth and Fred K. Weise, who served upon the jury with this affiant, were also of the opinion that said defendant was not guilty of the crime for which he had been tried and that the evidence failed to establish his guilt, but they expressed themselves as of the opinion that upon a recommendation to the court for mercy he would receive but a jail sentence and would be enabled to serve out, in the jail of Chelan county, Washington, all or a good portion thereof before a new trial could be had, and that it would be better for defendant so to serve than to await a new trial and that because of these facts, ·and in consideration thereof, they would consent to vote for a verdict of 'Guilty,' although they did not believe that guilt was established by the testimony."

But we think the matters stated in the affidavit are matters inhering in the verdict, and cannot be received to impeach the verdict. *State v. Holmes*, 12 Wash. 169, 40 Pac. 735, 41 Pac. 887; *State v. Aker*, 54 Wash. 342, 103 Pac. 420; *State v. Lorenzy*, 59 Wash. 308, 109 Pac. 1064, Ann. Cas. 1912 B. 153; Thompson, Trials (2d ed.), § 2618; 29 Cyc. 984.

"The rule is of universal acceptance that jurymen will not be permitted to impeach their own verdict, and thus declare their own perjury, for one oath would but offset the other. Both public decency and public policy alike demand the rejection of such testimony." *State v. Cloud*, 130 La. 955, 58 South. 827, Ann. Cas. 1913 D. 1192.

If the juryman making the affidavit actually believed that the evidence did not justify a verdict of guilty, it was a gross wrong on his part, for any consideration of personal convenience, or any consideration of convenience to the defendant, to compromise with the other members of the jury and agree on a verdict of guilty. The only verdict he could conscientiously render in keeping with his oath was one of not guilty. He therefore violated his oath, either in returning the verdict or in making the affidavit after the return of the verdict. When he so violated it cannot, of course, be ascertained without an inquiry into the privacy of the jury's deliberations. But public policy forbids such inquiries. To permit it would encourage tampering with jurymen after their discharge, would furnish to corrupt litigants a means of destroying the effect of a verdict contrary to their interests, and would weaken the public regard for this ancient method of ascertaining the truth of disputed allegations of fact. But few verdicts are reached in which some juryman does not yield in some degree his opinions and convictions to the opinions and convictions of others. And when he does so, even in criminal cases, it is to the interest of the public that he be not permitted thereafter to gainsay his act.

Our conclusion is that the judgment should be affirmed, and it will be so ordered.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.