177 P.3d 132 (2008)
STATE of Washington, Respondent,
v.
Frank Chester EARL, Appellant
No. 34629-0-II.
Court of Appeals of Washington, Division 2.
January 23, 2008.
March 17, 2006.
Eric J. Nielsen, Christopher Gibson, Casey Grannis, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Respondent.

PUBLISHED IN PART OPINION
HUNT, J.
¶ 1 Frank Earl appeals convictions for first degree child rape, attempted first degree child rape, second degree child rape, and second degree child molestation. He argues that (1) juror misconduct violated his right to a fair trial, (2) the trial court erroneously denied his motion for a mistrial, (3) the State's expert witness improperly commented *133 on the victim's credibility and Earl's guilt, (4) insufficient evidence supports both of his first degree rape convictions, (5) his trial counsel rendered ineffective assistance, (6) the trial court erred when it imposed an exceptional sentence for attempted first degree child rape, and (7) the trial court erred when it imposed community custody on the second degree child rape. The State concedes these two sentencing errors.
¶ 2 We affirm Earl's convictions, vacate the community custody portion of his sentence for second degree child rape, vacate his sentence for attempted first degree child rape, and remand for resentencing on the attempted first degree child rape conviction.

FACTS

I. Child Rape and Molestation
¶ 3 When AK was 12, she told her stepmother, Benito,[1] that Frank Earl, whom AK called "grandpa," had been sexually abusing her when her mother, Florenda, and Florenda's boyfriend, Harris, took AK to Earl's house to visit.[2] Earl had told AK not to tell anyone about the abuse because they would get in trouble.
¶ 4 Following interviews with child protective services (CPS), AK was removed from her mother's home and placed in protective custody with her father, Youell, or in foster care. Although these visits were supposed to be supervised, AK had unsupervised visits with her mother. While charges were pending, Earl went to Florenda's house when AK was visiting, prompting the court to take away Florenda's visitation rights.
¶ 5 AK later recanted her accusations against Earl. About three months before trial, AK returned to live with her mother and Harris.[3]

II. Procedure Pertaining To Published Portion of Opinion
¶ 6 On the morning of the second day of deliberations, Juror 7 went to the jury administration room with a letter from her psychologist indicating she should not continue with further deliberations because she was in a "psychological crisis." The psychologist's letter indicated that (1) Juror 7 was reporting "abdominal pain, nausea, constant crying, anxiety, depression, irritability, and fear for her safety since an incident that occurred during her jury deliberations on December 15, 2005;[4] (2) Juror 7 had told her that during a break another juror had "verbally attacked her, called her insulting names, and impugned her integrity";[5] (3) Juror 7's psychologist had been treating Juror 7 for a number of years for anxiety and stress related issues; and (4) he (the psychologist) feared that Juror 7's mental health would deteriorate if she continued as a juror. Because Juror 7 had discussed the case with her psychologist and she had fragile mental health, the State and Earl agreed that Juror 7 should be removed from jury service.
¶ 7 Out of the presence of the other jurors, the trial court brought Juror 7 into the courtroom and informed her that the parties had agreed to release her from further jury service. Juror 7 told the trial court that during a break another juror had used a "disrespectful term" to refer to some of the jurors, including her. After further questions from the trial court and counsel, Juror 7 indicated that it was more "situation calling" than name calling and, although she thought the other juror should not have made such comment during the break, the presiding juror was not sure it was "out of line." Juror 7 also told the court that she made a loud retort to the other juror's comment, but no one apologized.
¶ 8 Juror 7 told the trial court that she felt threatened by this other juror and that she *134 was afraid of going back into deliberations with this juror. Juror 7 acknowledged that she was "kind of sensitive" but she was not sure if she was being overly sensitive about this situation. She told the trial court that she had been in treatment with her psychologist for over ten years, following a bad car accident in which she suffered head injuries.
¶ 9 Defense counsel questioned Juror 7 about her psychologist's letter's mentioning that the offending juror had said she wanted the deliberations to end soon so she could be home with her family at Christmas. Juror 7 clarified that the other juror had never said this; rather, this was the impression that Juror 7 had gotten from the other juror.
¶ 10 The State and defense counsel then told the court that they wanted the name of the juror that offended Juror 7. The trial court temporarily excused Juror 7 from the courtroom and asked:
[W]hat is the purpose of identifyingI haven't heard her say what occurred, she can't disclose specifically, but it did occur in the jury roomwhat juror was done this. And she felt it was a personal attack, if I understood it right . . .
So, what good, I want you to tell me, gentlemen, does it do for this proceeding to identify this person who has offended this No. 7, No. 7 with a thirteen-year history of health care, who may be sensitive, overly sensitive. Give me a good reason why I should have this person identified. I want to go on with this thing and the deliberations will begin anew with an alternate.
Report of Proceedings (RP) (Dec. 16, 2005) at 678-79. Neither the State nor defense counsel provided the trial court with a reason to have the other juror identified.
¶ 11 Still out of the presence of the other jurors, the trial court then excused Juror 7 and called the presiding juror into the courtroom. The trial court asked the presiding juror, "Are you aware of any problems that I should know about that have occurred in your deliberations?" RP (Dec. 16, 2005) at 685. When the presiding juror started to answer, "Yes, sir, it's," the trial court interjected, "I should also advise you, I don't want you to say anything that's going to reveal the status of your deliberations." RP (Dec. 16, 2005) at 685. The presiding juror responded, "I understand. No, sir. No problems." RP (Dec. 16, 2005) at 685. The trial court then excused the presiding juror.
¶ 12 After the alternate juror arrived to replace Juror 7, the trial court called the whole jury into the courtroom and told them:
With the agreement of the State and the defense, the Court has excused No. 7 . . . And the deliberations, as I told you before, as you will remember, I said the deliberations should begin anew. Remember I used the word "anew"? And you all know what that means. You are going to start from the beginning with deliberations with the 12 of you. It was the Court's judgment it was in the best interest of both the State and the defense and, the juror that was excused, her health. So, by agreement, No. 7 was excused and 3 was brought back in, and you should begin deliberating anew.
RP (Dec. 16, 2005) at 689.
¶ 13 After the jury was excused, defense counsel gave the trial court a note Earl had written, explaining, "Mr. Earl wants on the record his concern that there is cause for a mistrial at this time." RP (Dec. 16, 2005) at 689. The trial court read Earl's note, which said:
You did not resolve the problem. The problem is still in the jury room. In [the judge from the previous two trials] courtroom each jury member was questioned. I am concerned that there is still cause for a mistrial.
Clerk's Papers (CP), at 135. After reading this note, the trial court stated that it did not agree with Earl, but that it would file the note for the record.
¶ 14 Earl appeals.

ANALYSIS

I. Juror Misconduct
¶ 15 Earl argues that juror misconduct deprived him of his right to a fair trial and that the trial court did not conduct an appropriate inquiry into the misconduct. *135 The State responds that the trial court did not abuse its discretion in limiting the scope of the inquiry because Earl did not meet his burden of proving juror misconduct or resulting prejudice. We agree with the State.
¶ 16 We review a trial court's investigation into jury misconduct for abuse of discretion. State v. Elmore, 155 Wash.2d 758, 761, 123 P.3d 72 (2005); State v. Lemieux, 75 Wash.2d 89, 91, 448 P.2d 943 (1968). The party alleging juror misconduct has the burden to show that misconduct occurred. State v. Hawkins, 72 Wash.2d 565, 566, 434 P.2d 584 (1967). We grant a new trial only where juror misconduct has prejudiced the defendant. State v. Boling, 131 Wash.App. 329, 332, 127 P.3d 740, review denied, 158 Wash.2d 1011, 145 P.3d 1214 (2006); State v. Briggs, 55 Wash.App. 44, 55, 776 P.2d 1347 (1989). Such is not the case here.
¶ 17 Earl contends that the trial court should have inquired into and learned the identity of the juror who had spoken with Juror 7 during a break and then, the court should have either removed the offending juror or at least reinstructed the jury. The State responds that the trial court did not abuse its discretion in choosing not to inquire further about the offending juror's identity because Earl did not establish that any other jurors, besides Juror 7, had actually engaged in misconduct.[6]
¶ 18 The trial court questioned Juror 7 at length, read her psychologist's letter asking the court to excuse her for mental and other health reasons, and questioned her further about the contents of the letter. It appeared to the trial court that the other juror's remark to Juror 7 was a "personal attack," and that Juror 7 was being overly sensitive. Besides the name or "situation calling," the jurors did not discuss the case during the break and not all the other jurors had been in the room at the time.
¶ 19 To help determine whether the incident had been a personal attack on Juror 7, or something else that might have tainted the entire jury, the trial court then brought in the presiding juror. The trial court asked the presiding juror to explain whether there had been any juror problems, but the trial court expressly admonished the presiding juror to do so without disclosing the status of the jury's deliberations. The presiding juror confirmed that there had not been juror problems.
¶ 20 Where there is potential juror misconduct, "the trial judge is faced with a `delicate and complex task,' in that he or she must adequately investigate the allegations, but also must take care to respect the principle of jury secrecy." Elmore, 155 Wash.2d at 761, 123 P.3d 72 (quoting United States v. Thomas, 116 F.3d 606, 618 (2d Cir.1997)). The trial court's inquiry should not risk violating "the cardinal principle that juror deliberations must remain secret." Elmore, 155 Wash.2d at 770, 123 P.3d 72.
¶ 21 In our view, the trial court adequately investigated the allegations of juror misconduct, protecting Earl's right to a fair trial while taking care not to violate the jury's secret deliberations. A personal remark, even a derogatory one, between jurors during a deliberation break, is not juror misconduct if it does not involve the substance of the jury's deliberations.[7] Earl has not met his burden of showing juror misconduct or resulting prejudice. We hold, therefore, that the trial court did not abuse its discretion in excusing Juror 7, in declining to identify the juror who had offended Juror 7, and in substituting the alternate juror and instructing the jury to begin its deliberations anew.
*136 ¶ 22 Earl also argues that the trial court erred when it denied his pro se motion for a mistrial based on juror misconduct.[8] The trial court removed the juror who committed the alleged misconduct. Earl made no further showing of misconduct or prejudice. For the same reasons that we found no trial court abuse of discretion in its handling of the alleged juror misconduct, we hold that the trial court did not abuse its discretion in denying Earl's motion for a mistrial. See State v. Greiff 141 Wash.2d 910, 921, 10 P.3d 390 (2000).
¶ 23 We affirm Earl's convictions.
¶ 24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] To protect AK's privacy, we do not use AK's parents' full names.
[2] Earl and Florenda had a 13-year sexual relationship, which encompassed the period of his sexual abuse of AK.
[3] Earl was in custody at this time, awaiting trial in this case and in his separate, but linked, case involving sexual abuse of his daughters.
[4] Clerk's Papers (CP) at 537.
[5] CP at 539.
[6] Because we find no abuse of trial court discretion in its handling of the alleged juror misconduct, we do not address the State's related argument that Earl cannot use Juror 7's statements to establish jury misconduct.
[7] Although we could find no published Washington case on point, we note the following opinions from the federal courts: United States v. Gaskin, 364 F.3d 438, 464 (2nd Cir.2004), cert. denied, 544 U.S. 990, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005) (juror discussions during a break that do not involve a review of the evidence or debate culpability of the defendant are not jury misconduct); United States v. Resko, 3 F.3d 684, 689-91 (3rd Cir.1993) (in reviewing alleged juror misconduct, courts should focus on whether the communications between the jurors constituted deliberations); Stockton v. Virginia, 852 F.2d 740, 747 (4th Cir.1988).
[8] Because we find no error in the trial court's denial of Earl's motion, we do not address the State's related arguments that Earl did not actually ask the trial court for a mistrial and, if he did, that Earl is bound by his attorney's decision not to seek a mistrial.