[No. 41442-2-II.   Division Two.   May 30, 2012.]

THE STATE OF WASHINGTON, *Appellant*, v. RAYMOND SAMUEL REYNOLDSON, *Respondent*.

*Mark E. Lindquist, Prosecuting Attorney*, and *Melody M. Crick, Deputy*, for appellant.

*Sheri L. Arnold* and *Reed M.B. Speir*, for respondent.

¶1 PENOYAR, J. — The State appeals the trial court's grant of a new trial to Raymond Reynoldson based on juror misconduct. The State argues that the trial court should not have considered a juror's affidavit stating that she lied

when the trial court polled her regarding the verdict and that she did not in fact agree with the jury's verdict because those issues are an integral part of the jury's verdict. We agree and reverse.

## FACTS

¶2  A jury found Reynoldson guilty of first degree kidnapping, attempted first degree rape, and second degree assault.[1] At the defense's request, the trial court polled the jury. Before polling each juror, the court explained:

> Ladies and gentlemen, what I'm going to do now is, I'm going to ask each of you two questions. The first question is, is this your verdict? In other words, the way that I have read these verdict forms, is that how you voted? . . .
>
> The second question is, is this the verdict of the jury? By that question, I mean, was the verdicts [sic], as I have read them, a unanimous decision by the entire jury?

Report of Proceedings (Oct. 1, 2010) at 6. Each juror agreed that the verdict was the jury's verdict and each juror's individual verdict.

¶3  While still in the parking lot after leaving the courthouse, a juror contacted the trial court, indicating that she did not agree with the verdict. The juror left the following message with the judicial assistant:

> I just left from providing the verdict in the Raymond Reynoldson case. I am just calling to let you know that I'm not comfortable with my verdict. I wasn't comfortable at the time. What I told the judge, I told the judge because I feel browbeat; I feel coerced; I feel large amounts of things from the other 11 jurors.

Clerk's Papers (CP) at 94.

¶4  Reynoldson filed a motion for a new trial. With his motion, Reynoldson submitted an affidavit of the juror in

---

[1] The jury also found by special verdict that Reynoldson committed the crimes of first degree kidnapping and second degree assault with a sexual motivation.

question. In that affidavit, the juror stated that she "was coerced" into returning a guilty verdict. CP at 88. She also stated that she was "verbally assaulted" and told that her reasoning was "ridiculous" and that her body language was "negative," and the presiding juror told her that the jury would "sit here as long as it takes" for her to change her vote. CP at 89. She stated that she eventually "gave up" when it "had been made abundantly clear" that her opinion would not sway the other jurors. CP at 90. She "verbally agreed to the verdict everyone wanted from me." CP at 90. She also stated, "When the jury was polled I lied when I affirmed my 'guilty' vote because I was convinced that the judge would send us all back into that room together and I would be subjected to further verbal abuse and ridicule." CP at 90.

¶5 Following a hearing on the motion, the trial court found that the juror in question did not truly believe Reynoldson was guilty and that the juror had committed misconduct by lying when the trial court polled her. The trial court granted Reynoldson's motion for a new trial on the basis that the jury did not render a unanimous verdict. The State appeals.

## ANALYSIS

■■ ¶6 CrR 7.5(a)(2)[2] permits a trial court to grant a new trial on the grounds that the jury committed miscon-

---

[2] CrR 7.5(a) states:

The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:

(1) Receipt by the jury of any evidence, paper, document or book not allowed by the court;

(2) Misconduct of the prosecution or jury;

(3) Newly discovered evidence material for the defendant, which the defendant could not have discovered with reasonable diligence and produced at the trial;

(4) Accident or surprise;

(5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial;

duct. In a criminal proceeding, a new trial is necessary only when the " ' "defendant has been so prejudiced that nothing short of a new trial can [e]nsure that the defendant will be treated fairly." ' " *State v. Chanthabouly*, 164 Wn. App. 104, 140, 262 P.3d 144 (2011) (alteration in original) (quoting *State v. Roberts*, 142 Wn.2d 471, 533, 14 P.3d 713 (2000) (quoting *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996))), *review denied*, 173 Wn.2d 1018 (2012). We review the trial court's grant of a motion for a new trial to determine whether the trial court granted the motion on untenable grounds or for untenable reasons. *Chanthabouly*, 164 Wn. App. at 140. Generally, we require a much stronger showing of an untenable basis to set aside an order granting a new trial than one denying a new trial. *State v. Crowell*, 92 Wn.2d 143, 145-46, 594 P.2d 905 (1979); *State v. Taylor*, 60 Wn.2d 32, 41-42, 371 P.2d 617 (1962); *State v. Dawkins*, 71 Wn. App. 902, 907, 863 P.2d 124 (1993).

¶7 As a general rule, we are reluctant to inquire into how a jury arrives at its verdict. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). A strong, affirmative showing of misconduct is necessary in order to overcome the policy favoring stable and certain verdicts and the jury's secret, frank, and free discussion of the evidence. *Balisok*, 123 Wn.2d at 117-18. For example, the jury's consideration of novel or extrinsic evidence is juror misconduct and can be grounds for a new trial. *Balisok*, 123 Wn.2d at 118 (citing *State v. Gobin*, 73 Wn.2d 206, 211-12, 437 P.2d 389 (1968)). Novel or extrinsic evidence is information that is outside all the evidence admitted at trial, either orally or by document. *Balisok*, 123 Wn.2d at 118. The party alleging juror misconduct has the burden to show that misconduct occurred. *State v. Earl*, 142 Wn. App. 768, 774, 177 P.3d 132 (2008).

---

(6) Error of law occurring at the trial and objected to at the time by the defendant;

(7) That the verdict or decision is contrary to law and the evidence;

(8) That substantial justice has not been done.

When the motion is based on matters outside the record, the facts shall be shown by affidavit.

Courts grant a new trial only where juror misconduct has prejudiced the defendant. *Earl*, 142 Wn. App. at 774; *see also* CrR 7.5(a) (new trial warranted only where a "substantial right of the defendant was materially affected").

¶8 Here, the trial court found that the juror committed misconduct when she lied during the jury poll. As Reynoldson notes, the trial court did not make findings of fact on or rule on any other aspect of the juror's declaration. *See* CP at 110 ("The juror's conduct in lying when polled by the court is misconduct under CrR 7.5(a)(2)."). Therefore, the sole question before us is whether we may consider the juror's statements in her affidavit that she lied when she was polled.

■ ¶9 In 1901, our Supreme Court clarified that when evaluating affidavits to consider whether misconduct is grounds for a new trial

> we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors.

*State v. Parker*, 25 Wash. 405, 415, 65 P. 776 (1901); *see also State v. Marks*, 90 Wn. App. 980, 986, 955 P.2d 406 (1998) ("Jurors may provide only factual information regarding actual conduct alleged to be misconduct, not about how such conduct affected their deliberations." (citing *Gardner v. Malone*, 60 Wn.2d 836, 840, 376 P.2d 651, 379 P.2d 918 (1962))).

■ ¶10 Later case law specified what matters inhere in the verdict and cannot be considered:

> The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their ver-

dicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict.

*Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967); *see also Gardner*, 60 Wn.2d at 841-42 (holding that allegation that jurors " 'had *omitted to consider* important evidence or issues . . . or had by any other *motive or belief been led to their decision*' " is insufficient to support a motion for a new trial (quoting 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2349, at 681 (McNaughton rev. ed. 1961))).

¶11 Reynoldson argues that the facts that the juror lied about her verdict and lied when the jury was polled do not inhere in the jury's verdict and therefore we may consider that information. We disagree. *Cox* prohibits consideration of a juror's statement that she lied when rendering her verdict. The juror's own affidavit makes this apparent: She agreed to the verdict in the jury room even though she "never felt good about it and never believed it was appropriate." CP at 90. She also stated that she "lied when I affirmed my 'guilty' vote" when the jury was polled. CP at 90. Making these statements inherently required the juror to testify as to her mental process at the time. Her assertions as to her "beliefs" inhered in the verdict.

¶12 Our Supreme Court addressed exactly such a situation almost a century ago in *State v. Gay*, 82 Wash. 423, 144 P. 711 (1914). In that case, a juror submitted an affidavit after the trial asserting that "at the time of agreeing to said verdict this [juror] did not believe and had not been convinced by the evidence produced upon the trial of said cause that the defendant was guilty as charged in the information of said cause, and he does not now believe that he was guilty." *Gay*, 82 Wash. at 437. The court held that "the matters stated in the affidavit are matters inhering in

the verdict, and cannot be received to impeach the verdict." *Gay*, 82 Wash. at 438. The court stated, " 'The rule is of universal acceptance that jurymen will not be permitted to impeach their own verdict, and thus declare their own perjury, for one oath would but offset the other. Both public decency and public policy alike demand the rejection of such testimony.' " *Gay*, 82 Wash. at 438 (quoting *State v. Cloud*, 130 La. 955, 959, 58 So. 827 (1912)). The court then stated:

> If the juryman making the affidavit actually believed that the evidence did not justify a verdict of guilty, it was a gross wrong on his part, for any consideration of personal convenience, or any consideration of convenience to the defendant, to compromise with the other members of the jury and agree on a verdict of guilty. The only verdict he could conscientiously render in keeping with his oath was one of not guilty. He therefore violated his oath either in returning the verdict, or in making the affidavit after the return of the verdict. When he so violated it cannot, of course, be ascertained without an inquiry into the privacy of the jury's deliberations. But public policy forbids such inquiries. To permit it would encourage tampering with jurymen after their discharge, would furnish to corrupt litigants a means of destroying the effect of a verdict contrary to their interests, and would weaken the public regard for this ancient method of ascertaining the truth of disputed allegations of fact. But few verdicts are reached in which some juryman does not yield in some degree his opinions and convictions to the opinions and convictions of others. And when he does so, even in criminal cases, it is to the interest of the public that he be not permitted thereafter to gainsay his act.

*Gay*, 82 Wash. at 439; *see also State v. Aker*, 54 Wash. 342, 345, 103 P. 420 (1909) (holding that discussion among jurors of their agreement to the defendant's guilt during trial and before deliberation was "not such misconduct as can be shown by the affidavit of a juror").

¶13 Reynoldson argues that courts recently have declined to follow the *Gay* rule. First, Reynoldson argues that later cases supersede the *Gay* court's public policy rationale, citing *Balisok*. *Balisok* does not depart from the rule in

*Gay*. At issue in *Balisok* was the jury's reenactment of the events in question during deliberations. 123 Wn.2d at 117-18. The court, relying in part on the rules in *Gay* and *Gardner*, evaluated the reenactment to determine whether any extrinsic evidence had been introduced, and ultimately held that no misconduct occurred. *Balisok*, 123 Wn.2d at 117, 120. The holding in *Balisok* does not undermine the rule in *Gay* that a juror's affidavit may not be used to inquire into that juror's thought processes during deliberation.

¶14 Reynoldson next argues that our decision in *State v. Hoff* rendered *Gay* no longer good law. 31 Wn. App. 809, 644 P.2d 763 (1982). In *Hoff*, we held that a juror's affidavit stating that she "was sick with a cold during deliberation and that other jurors exerted pressure on her to vote to convict the defendant" could not be considered as grounds for a new trial because "[t]he effect of a juror's illness and the claimed pressure by others inheres in the verdict and may not be used to impeach the verdict." *Hoff*, 31 Wn. App. at 813 (citing *State v. Forsyth*, 13 Wn. App. 133, 138, 533 P.2d 847 (1975)). We stated, citing *Gay*, "Public policy forbids inquiries into the privacy of the jury's deliberations." *Hoff*, 31 Wn. App. at 813 (citing *Gay*, 82 Wash. at 439). Again, this is not a departure from or limitation on the holding in *Gay*. *See also State v. Maxfield*, 46 Wn.2d 822, 828, 285 P.2d 887 (1955) (holding that juror's concern that he was pressured into changing his mind could not impeach the verdict); *Forsyth*, 13 Wn. App. at 138-40 (holding that a juror's affidavit that she had been ill and had been pressured by the other jurors into voting to convict the defendant related to the juror's decision-making process and therefore inhered in the verdict).

¶15 Finally, we note that the *Gay* rule is consistent with the rule in other jurisdictions. Federal Rule of Evidence 606(b)(1) provides that except for certain exceptions not relevant here, "[d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any

statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *See also United States v. Lakhani,* 480 F.3d 171, 184-85 (3d Cir. 2007) (holding that juror's posttrial statements that she was coerced into rendering a verdict with which she did not agree could not be considered by the trial court in reviewing a motion for a new trial).

¶16 Here, the juror presented no facts supporting a finding of misconduct. First, she did not lie to the trial court. As she stated, her verdict and that of the jury was to convict. The trial court asked during the jury poll how she voted. She agreed that she voted for a guilty verdict. This was true and not dishonest.

¶17 Second, the juror stated in her affidavit that she did not think Reynoldson was proved guilty but nevertheless voted to convict. The reasoning behind her vote to convict clearly inheres in the verdict and is not subject to the trial court's later review. Nor does her response to the polling questions change the result. Juror deliberations must be private. The trial court relied on untenable grounds when it granted a new trial on the basis of the juror's statements.

¶18 We reverse and remand to the trial court to reinstate the jury's verdict.

JOHANSON, A.C.J., and HUNT, J., concur.

Review denied at 175 Wn.2d 1019 (2012).