2016 NOV 21 AM 8:47



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 74044-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JIMMY JOSEPH WHITE, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 21, 2016 |

SCHINDLER, J. — A jury convicted Jimmy Joseph White of two counts of unlawful possession of a firearm in the first degree. White claims the court violated his constitutional right to a fair and impartial jury by failing to investigate juror misconduct. Because the invited error doctrine precludes the claim of juror misconduct, and in any event, the record establishes no juror misconduct or prejudice, we affirm the conviction.

Jimmy Jordan and his grandson T.J. lived in an apartment in Monroe on Blueberry Lane. T.J. returned home from school on February 1, 2012 at approximately 2:00 p.m. T.J. noticed the front door was ajar and there was mud on the windowsill and floor of his bedroom. A number of items were missing from the apartment including an Xbox video game controller, video games, and two firearms that belonged to Jordan—a Savage .22 caliber rifle and a Winchester Ranger 12-gauge pump shotgun in a "soft case."

Monroe Police Officer Kelly Pitts interviewed Jordan and 14-year-old T.J. T.J. told Officer Pitts he "might want to talk to" D.W. and L.E. Officer Pitts and Sergeant Irving went to L.E.'s home and found D.W. hiding in a closet. D.W. had the Xbox video game controller and video games but did not have the firearms. While at the house, a cell phone rang. The phone displayed the name of the caller as "Jimmy White." Officer Pitts answered the cell phone. The caller identified himself as Jimmy White. Officer Pitts told White the police were investigating "a burglary and potential stolen weapons" and "would like him to come down to our police department and speak with him." White said he "didn't know what [Officer Pitts] was talking about" but would go to the police station.

White arrived at the police station at approximately 9:30 p.m. White waived his Miranda[1] rights and agreed to give a recorded statement. White told Officer Pitts and Officer James Tolbert that he received a text message from D.W. earlier that day stating he "had firearms" and asking White if he "would get rid of something for him." White told Officer Tolbert he "knew he was not allowed to possess firearms." White said he "did not meet" D.W. and had "no idea" about the location of the firearms. The interview concluded at approximately 10:15 p.m.

After further investigation, Officer Tolbert arrested White while he was in the police station parking lot. In a second recorded interview, White admitted he drove D.W. to the apartment on Blueberry Lane where D.W. picked up a case that contained firearms. White admitted D.W. " 'put [the firearms] in my car . . . and I drove away.' " White told Officer Tolbert the firearms were at his parents' home in Sultan. The police

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

recovered the Savage .22 caliber rifle and the Winchester 12-gauge shotgun with the soft case at the home.

The State charged White with burglary in the first degree, two counts of unlawful possession of a firearm, and two counts of possession of a stolen firearm.[2]

The three-day jury trial began on July 1, 2013. A number of witnesses testified including T.J., Jordan, Officer Pitts, and Officer Tolbert. The court admitted the Savage .22 caliber rifle and the Winchester Ranger 12-gauge shotgun into evidence as exhibits. Transcripts from the recorded interviews with White were marked but not admitted. White stipulated he was ineligible to possess a firearm on February 1, 2012 because of an earlier conviction for a serious offense.

White's mother and stepfather testified on behalf of the defense. White's mother testified White arrived at her home at approximately 3:15 p.m. on February 1. White's mother said that after White saw the firearms in the trunk of his car, he was "[a]gitated" and "upset." White's stepfather testified White told him he "didn't know where [the firearms] c[a]me from." White's stepfather removed the firearms from the trunk of the car and put them in a shed.

In closing, the defense attorney argued White was not guilty of possession of a stolen firearm because there was "absolutely no evidence" White knew the firearms were stolen. The attorney argued White was not guilty of unlawful possession of a firearm in the first degree because the State did not prove when White knew the guns were in his trunk, and a "momentary . . . handling" of the firearms was insufficient to prove unlawful possession.

---

[2] The State dismissed the burglary charge after it could not locate D.W.

After jury deliberations began, the court discussed with the attorneys a jury-inquiry form that juror 2 gave to the bailiff but did not want to submit to the court for a response. The defense attorney stated, "I don't think a response is necessary." The court agreed and filed the inquiry form for the record.

The jury found White not guilty of the two counts of possession of a stolen firearm. The jury found White guilty of two counts of unlawful possession of a firearm in the first degree.

On appeal, White seeks reversal arguing the court violated his constitutional right to a fair and impartial jury by failing to investigate juror misconduct.

The United States Constitution and the Washington State Constitution guarantee a defendant the right to trial by a fair and an impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Slert, No. 92310-8, 2016 WL 6330475, at *3 (Wash. Oct. 27, 2016). " 'The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct.' " State v. Gaines, 194 Wn. App. 892, 896, 380 P.3d 540 (2016) (quoting State v. Tigano, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991)).

RCW 2.36.110 states:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention, or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

Under CrR 6.5, "[i]f at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged."

"RCW 2.36.110 and CrR 6.5 place a 'continuous obligation' on the trial court to investigate allegations of juror unfitness and to excuse jurors who are found to be unfit,

4

even if they are already deliberating." State v. Elmore, 155 Wn.2d 758, 773, 123 P.3d 72 (2005) (quoting State v. Jorden, 103 Wn. App. 221, 227, 11 P.3d 866 (2000)).

A party alleging juror misconduct has the burden to show misconduct occurred. State v. Reynoldson, 168 Wn. App. 543, 547, 277 P.3d 700 (2012); State v. Hawkins, 72 Wn.2d 565, 568, 434 P.2d 584 (1967). We review investigation of juror misconduct for abuse of discretion. Gaines, 194 Wn. App. at 896; Elmore, 155 Wn.2d at 768-69; State v. Earl, 142 Wn. App. 768, 774, 177 P.3d 132 (2008). A new trial is warranted "only where juror misconduct has prejudiced the defendant." Reynoldson, 168 Wn. App. at 548; see State v. Depaz, 165 Wn.2d 842, 856, 204 P.3d 217 (2009).

The invited error doctrine precludes White from arguing the jury-inquiry form submitted by juror 2 to the bailiff violated his right to a fair and impartial jury and the court erred in failing to investigate. In determining whether the invited error doctrine applies, we consider whether the defendant "affirmatively assented to the error, materially contributed to it, or benefited from it." In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). The invited error doctrine is strictly enforced to prevent "parties from benefiting from an error they caused at trial regardless of whether it was done intentionally or unintentionally." State v. Recuenco, 154 Wn.2d 156, 163, 110 P.3d 188 (2005). Even where constitutional rights are implicated, the invited error doctrine "precludes appellate review." State v. Alger, 31 Wn. App. 244, 249, 640 P.2d 44 (1982); Recuenco, 154 Wn.2d at 163.

After deliberations began on July 3, the court met with the attorneys to address a question from the jury written on a preprinted "INQUIRY FROM THE JURY AND COURT'S RESPONSE" form. The bottom of the preprinted form states, "SAVE - MUST BE FILED." One of the jury-inquiry forms state, "Can we request transcripts Exhibit 11[,]

5

Exhibit 10[,] Exhibit 12[, and] Exhibit 9." After consulting with the attorneys, the court responded, "You must rely on your memory as to the testimony. See Instruction 1."

At the same time, the court addressed the inquiry form that juror 2 had signed and dated July 2 but decided not to submit to the court. On the preprinted form, juror 2 states, "Is it appropriate to have the weapons laying unsecure in front of the defendant?" The bailiff provided copies of the inquiry form to the State and defense attorney.

The court told the attorneys that juror 2 gave the form to the bailiff because "he wrote on it and he thought if you wrote it, he had to give it to [the bailiff]," but then "decided not to submit" the question to the court.

> THE COURT: All right. Juror No. 2 gave this other question form to my law clerk, but then said he decided not to submit it. Did you see this?
> [PROSECUTOR]: Yes. Your law clerk provided the State and Defense with a copy.
> THE COURT: So I'm going to file it just because I'm supposed to make — he gave it to her because he wrote on it and he thought if you wrote it, he had to give it to her. Once I have it, I think I have to file it.

Defense counsel stated he did not "think a response is necessary." The court agreed.

> [DEFENSE COUNSEL]: I don't think a response is necessary.
> THE COURT: Right. Well, especially since he said he decided not to submit it.
> [DEFENSE COUNSEL]: Okay.
> THE COURT: So unless you want me to answer — so I'm just writing on here why we didn't answer, although I'm making a record of it also. All right. Thank you, Counsel.

The court wrote, "Juror said did not wish to submit so no answer" and filed the form with the clerk.

The record shows that even if error, White assented to or materially contributed to the court's decision not to take further action concerning the inquiry form submitted by juror 2.

Nonetheless, we also conclude the record does not establish juror misconduct or prejudice. Contrary White's assertion on appeal, the inquiry form completed by juror 2 does not show the juror violated the court's instructions or was unable to act as a fair or impartial juror. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001) ("We presume that juries follow all instructions given."). Moreover, White cannot show prejudice. There was overwhelming evidence White was guilty of the two counts of unlawful possession of a firearm in the first degree. White admitted he drove D.W. to Jordan's apartment and D.W. "put [the firearms] in my car . . . and I drove away." White admitted he knew the case contained firearms " 'the minute' " he let D.W. put the case in his car. White's mother and stepfather both testified the firearms were in the trunk of White's car when White came to their home the afternoon of February 1.

After consideration of the nonexclusive factors in State v. Sinclair, 192 Wn. App. 380, 391, 367 P.3d 612 (2016), we waive the imposition of appellate costs and affirm White's conviction.

WE CONCUR: